**EXHIBIT "A"**



**CT Corporation**
**Service of Process Notification**
12/02/2022
CT Log Number 542779877

## Service of Process Transmittal Summary

**TO:** Jennifer Heflin
Government Employees Insurance Company
1 GEICO BLVD
FREDERICKSBURG, VA 22412-9000

**RE:** **Process Served in Maryland**

**FOR:** GEICO Insurance Agency, LLC  (Domestic State: MD)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | M.V.B. COLLISION INC. d/b/a MID ISLAND COLLISION, vs. GEICO INSURANCE COMPANY |
| **CASE #:** | 6167972022 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | The Corporation Trust Incorporated, Lutherville Timonium, MD |
| **DATE/METHOD OF SERVICE:** | By Process Server on 12/02/2022 at 14:00 |
| **JURISDICTION SERVED:** | Maryland |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Jennifer Heflin  jheflin@geico.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Incorporated |
| | 2405 York Rd |
| | Ste 201 |
| | Lutherville Timonium, MD 21093 |
| | 800-448-5350 |
| | MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Fri, Dec 2, 2022
**Server Name:**                   Rodney Getlan

| Entity Served | GEICO INSURANCE COMPANY |
|---|---|
| Case Number | 616797/2022 |
| Jurisdiction | MD |

| Inserts | | |
|---|---|---|
|  |  |  |



**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** NASSAU
----------------------------------------------------------------x
M.V.B. COLLISION, INC. d/b/a MID ISLAND
COLLISION,

Plaintiff/Petitioner,

      - against -                        Index No. 616797/2022

GEICO INSURANCE COMPANY,

Defendant/Respondent.

----------------------------------------------------------------x

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

> 1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

> 2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney**:
  Give this Notice to your attorney.  (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney**:
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

Page 1  of  2             6/6/18   EFM-1

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: December 1, 2022

Gina M. Arnedos
Name
Steven F. Goldstein, LLP

Firm Name

One Old Country Rd - Suite 318
Address

Carle Place, NY 11514

516-873-0011
Phone

GARNEDOS@SFGLLP.com
E-Mail

To: GEICO General Insurance Co.

One GEICO Plaza

Washington, DC 20076-0001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X

M.V.B. COLLISION INC. d/b/a MID ISLAND
COLLISION,

                                        Plaintiff,

           -against-

GEICO INSURANCE COMPANY,

                                        Defendant.
-------------------------------------------------------------------X

Index No.: 616797/2022
Date purchased: 11/30/2022

**SUMMONS**

Plaintiff designates Nassau
County as the place of trial.

The basis of venue is Plaintiff's
principal place of business
located at 20 Lakeview Ave.,
Rockville Centre, NY 11570.

*To the above-named Defendants:*

           **You are hereby summoned** to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this
summons, exclusive of the day of service (or within 30 days after the service is complete if this
summons is not personally delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by default for the relief demanded
in the complaint.

Dated:  Carle Place, New York
            November 22, 2022

                                        STEVEN F. GOLDSTEIN, LLP

                                        BY: GINA M. ARNEDOS
                                        *Attorneys for Plaintiff*
                                        One Old Country Road, Suite 318
                                        Carle Place, New York 11514
                                        (516) 873-0011

TO:     GEICO General Insurance Company
            One GEICO Plaza
            Washington, DC 20076-0001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
-------------------------------------------------------------------X
M.V.B. COLLISION INC. d/b/a MID ISLAND      Index No.: 616797/2022
COLLISION,

                     Plaintiff,            **VERIFIED COMPLAINT**

      -against-


GEICO INSURANCE COMPANY,

                  Defendant.
-------------------------------------------------------------------X

      Plaintiff, M.V.B. COLLISION INC. d/b/a MID ISLAND COLLISION, by its attorneys,

STEVEN F. GOLDSTEIN, LLP, as and for its Verified Complaint, complaining of the

defendant, respectfully alleges, upon information and belief, as follows:

### PRELIMINARY STATEMENT

      1.      That Plaintiff, M.V.B. COLLISION INC. d/b/a Mid-Island Collision (hereinafter

referred to as "MVB" and/or "Plaintiff"), is a New York State corporation which is registered

and licensed as an auto body repair shop. Its principal place of business is 20 Lakeview Avenue,

Rockville Centre, located in Nassau County, New York.

      2.      That Defendant, GEICO INSURANCE COMPANY (hereinafter referred to as

"GEICO" and/or "Defendant"), is a foreign corporation authorized by the New York State

Department of Financial Services to sell automobile insurance in the State of New York.

GEICO maintains offices throughout New York State.

      3.      That Plaintiff, MVB, performs auto body repairs to motor vehicles, thereby

returning them to their pre-loss condition. Such repairs include, among other operations,

diagnosis of collision avoidance systems that must be pre-scanned within 2 hours of accident for

safety and liability reasons.   MVB is one of the leading automobile repair facilities in the nation.

Its employees are trained by most major manufacturers and its facility uses tools required by

1

those manufacturers.  It maintains state-of-the-art facilities and its employees are trained and certified by most major automobile manufacturers.

4.     That MVB is required by New York State regulations to repair all vehicles to their pre-accident condition (11 NYCRR 216).  In order to comply with these regulations, MVB strictly adheres to manufacturer specifications and requirements in the performance of its repairs. Without doing the foregoing, a motor vehicle cannot be returned to its safe and reliable pre-accident condition.

5.     That as part of its insurance contract, GEICO is obligated to pay claims of its insureds (known as 1st party claims) and claims presented by vehicle owners whose vehicles have been damaged by an insured of GEICO (known as 3rd party claims).

6.     That insurance contracts and New York Statutes and Regulations require that all damaged vehicles be repaired to their pre-accident condition and that automobile insurers pay to have those vehicles restored to their pre-loss conditions.

7.     That at all times hereinafter mentioned, GEICO transacted, and continues to transact, business within the State of New York and/or contracts to supply goods and services in the State of New York.

## PHOTO-ESTIMATING

8.     That since approximately 2018, GEICO has engaged in the practice of "photo-estimating." Photo-estimating is the process whereby GEICO, through its employees and adjusters, reviews photographs submitted by its insureds and claimants of collision damage sustained to the subject vehicles, and then creates its estimates of the cost of automobile repairs based solely on those photos.  The photographs are submitted by GEICO's insureds or third-party claimants.  The insured or claimant is then issued payment based on the amount stated in the photo-estimate.

2

9.     That the insureds and third-party claimants who avail themselves of the photo-estimating process agree to have the damage to their motor vehicles appraised by means of photographs taken by themselves and submitted to Defendant.

10.     That Defendant, GEICO, encourages consumers in New York State and other jurisdictions, including first- and third-party claimants, to utilize its photo-estimating program when they report their claims and by advertising on television, the internet, print ads, social media and other means.

11.     That the photo-estimates are almost always inaccurate and insufficient and are, by their nature, incomplete because they do not fully assess the damage to the vehicle.   They fail to include any damage not visible in the photos such as obvious repairs.   The appraisers routinely, knowingly and fraudulently undervalue the cost of repairing the vehicle and restoring it back to its pre-loss condition.

12.     That the same car viewed under the same conditions, by the same insurance company's appraisers are given two completely different costs of repair depending upon whether the estimate is based on photographs or an in-person inspection.

13.     That the photo-estimates fail to advise consumers of obvious safety issues and fail to warn consumers that their vehicles are unsafe to drive.   This places consumers and all innocent parties at risk because unsafe cars are on the road.

14.     That the insurers use the photo-estimating process to knowingly defraud NYS consumers by undervaluing the cost of repairing their vehicles back to pre-loss condition.

15.     That they abuse consumers by taking unfair advantage of the faith that consumers place in the company's "expert" appraisers.

16.     That the insurers know that most consumers will trust the insurance company's estimate of damages and they'll simply deposit the check without ever getting a supplement or

3

second opinion on the cost of repair because they believe that their vehicle sustained only minor damage.

17.     That by deliberately and knowingly undervaluing the cost of repair, insurers are also defrauding NYS and its residents by manipulating their reserves.   If they undervalue the cost of repair by 90%, their reserves are similarly reduced by 90%.

18.     That the photographs depict only damage that is visible to the naked eye.

19.     That upon information and belief, the photo-estimating procedure was instituted with knowledge that a significant number of insureds or claimants will accept the payment without ever having the vehicle inspected by a professional repair facility, and in fact in many cases will never have the vehicle repaired.

20.     That GEICO has saved millions of dollars based on its expectation that the insureds and claimants will accept such payment and never have the vehicle repaired.

21.     That photo-estimating is unsafe, improper, and unprofessional in situations where an estimate of unibody damage cannot be done from a photograph.   To the contrary, for a unibody vehicle to be properly evaluated the vehicle must be set-up and measured at a professional repair autobody facility in order to determine the extent of unibody damage.

22.     That this program is offered to insureds and third-party claimants, and they are encouraged to participate, while GEICO is fully aware of the fact that such method of appraising the damage is ineffective, illegal, fraudulent, and does not comport with industry standards.

23.     That this deception perpetrated upon insureds and third-party claimants begins with the appraisal based upon photographs which cannot, and do not, account for safety and liability considerations.

24.     Prior to entering into its scheme, the defendant was aware that its insureds/third-party claimants unwittingly relied on its misrepresentations that photo-estimating was a

4

competent, professional, effective and well recognized method of estimating the actual cost of repairs to motor vehicles that sustained damages when such was not the case.

25.     Defendant was aware and remains aware, that after impact vehicles are unsafe to drive any distance and that they often do not operate as designed after impact.  Automobile manufacturers acknowledge this and recommend that all vehicles, post-impact, be transported to a professional automobile repair facility and broken down for a complete analysis of damage, which cannot be seen with photographs or visual observations.

26.     That reliance upon photo-estimates, which never show full damage, allows GEICO to deposit monies into reserve accounts that do not reflect the true value of damages to the vehicles, thereby avoiding fees and other financial obligations.

27.     That Defendant's plan and scheme operate to mislead its insureds and third-party claimants into believing that there is no need to have their vehicles properly repaired, also putting them in harm's way by creating the false sense that their vehicles were safe to drive when in fact, they were not.

28.     That Defendant's plan and scheme are intentionally designed to manipulate and understate its losses as reflected in its combined expense and loss ratios.

29.     That Defendant's plan and scheme are intentionally designed to manipulate and understate its losses reflected in its combined operating ratio.

30.     That Defendant's plan and scheme are intentionally designed to manipulate and reduce the amount of money held in reserve for each claim in order to falsely enhance its financial position.

31.     That Defendant's plan and scheme are intentionally designed to manipulate and reduce the amount of money held in its unpaid loss reserves in order to falsely enhance its financial position.

5

32.     That Defendant instituted the foregoing procedure with the knowledge that a substantial number of insureds and third-party claimants will be deceived into accepting the defendant's payments and never have their vehicles repaired to its pre-loss condition, thereby saving the defendant millions of dollars and depriving the plaintiff of the opportunity to repair those vehicles.

33.     That neither the N.Y.S. Insurance Law, nor the regulations promulgated thereunder, authorize or otherwise approve the use of estimating physical or mechanical damages to an automobile in the manner used by the defendant as described herein.

34.     That it is well known that motor vehicles sustain damages that are not visible on a photograph (i.e.: damage to computer or sensors). Therefore, the good and accepted practice of appraising physical or mechanical damage to a motor vehicle is for an appraiser to personally view all of the damage, including such damage as may be hidden.

35.     That Defendant's scheme sacrifices the safety of the vehicle operators and the general public by failing to advise the owners and drivers that it is unsafe to operate the vehicle (i.e.: manufacturers require that damage vehicles be towed to a repair facility following an accident).

36.     That appraisers who utilize the photo-estimating system are abrogating their duty and acting in contravention to the good and accepted industry practices requiring them to properly and completely appraise the cost of repair on behalf of the defendant's insureds' and/or claimants.

37.     That lessees of vehicles which are not repaired in accordance with manufacturer standards and procedures are subject to economic damages pursuant to the lease agreement. Likewise, owners of those vehicles remain subject to economic damages in the form of reduced resale value.

38.     The following are *examples (ONLY)* of vehicles that were improperly appraised through Defendant's photo-estimating scheme:

a.     ### THE MILWOOD CLAIM

MILWOOD, was afforded an automobile insurance policy by Defendant, GEICO, which provided insurance coverage for damage to his 2018 AUDI A4 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about May 20, 2021, MILWOOD's 2018 AUDI A4 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, MILWOOD's 2018 AUDI A4 motor vehicle was undamaged.

Defendant, GEICO, inspected the 2018 AUDI A4 motor vehicle owned by MILWOOD, via photo estimating on the GEICO app, and, on May 25, 2021, GEICO's Appraiser Laura Dursin, wrote an Estimate of Record in the amount of $952.05.

Thereafter, a GEICO adjuster, Sahil Sood, personally inspected the aforementioned 2018 AUDI A4 motor vehicle and wrote a Supplemental Estimate ("S01") in the amount of $8,828.23.

Thereafter, on July 2, 2021, GEICO's adjuster, Sahil Sood, personally inspected the aforementioned 2017 BMW 340i motor vehicle and wrote a Second Supplement ("S02") in the amount of $11,617.50.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to MILWOOD by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., in its final bill, to be $42,034.74.

b.     ### THE DASKALOTHANASSIS CLAIM

DASKALOTHANASSIS, was afforded an automobile insurance policy by Defendant, GEICO, which provided insurance coverage for his 2019 Toyota RAV 4 motor vehicle, including collision coverage, comprehensive coverage and coverage for all costs incidental thereto.

7

On or about April 5, 2020, DASKALOTHANASSIS's 2019 Toyota RAV 4 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, DASKALOTHANASSIS's 2019 Toyota RAV 4 motor vehicle was undamaged.

Defendant, GEICO, inspected the 2019 Toyota RAV 4 motor vehicle owned by DASKALOTHANASSIS, via photo estimating on the GEICO app, and wrote an Estimate in the amount of $906.08.

Thereafter, a GEICO adjuster inspected the aforementioned 2019 Toyota RAV 4 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $18,123.44.

Thereafter, a GEICO adjuster inspected the aforementioned 2019 Toyota RAV 4 motor vehicle in person and wrote a Final Estimate in the amount of $836.66.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to DASKALOTHANASSIS by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $23,570.25

c.   ***THE McINDOE CLAIM***

McINDOE, was afforded an automobile insurance policy by Defendant, GEICO, which provided insurance coverage for his 2017 Audi A3 motor vehicle, including collision coverage, comprehensive coverage and coverage for all costs incidental thereto.

On or about May 8, 2020, McINDOE's 2017 Audi A3 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, McINDOE's 2017 Audi A3 motor vehicle was undamaged.

Defendant, GEICO, inspected the 2017 Audi A3 motor vehicle owned by McINDOE, via photo estimating on the GEICO app, and wrote an Estimate in the amount of $1749.01.

Thereafter, a GEICO adjuster inspected the aforementioned 2017 Audi A3 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $11,805.92.

Thereafter, a GEICO adjuster inspected the aforementioned 2017 Audi A3 motor vehicle in person and wrote a Supplemental Estimate 2 in the amount of $2,211.91.

Thereafter, a GEICO adjuster inspected the aforementioned 2017 Audi A3 motor vehicle in person and wrote a Final Estimate in the amount of $407.34.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to McINDOE by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $19,230.82.

d. ***THE COSTELLO CLAIM***

COSTELLO was afforded an automobile insurance policy by Defendant, GEICO, which provided insurance coverage for her 2019 Volvo XC90 motor vehicle, including collision coverage, comprehensive coverage and coverage for all costs incidental thereto.

On or about June 20, 2020, COSTELLO's 2019 Volvo XC90 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, COSTELLO's 2019 Volvo XC90 motor vehicle was undamaged.

Defendant, GEICO, inspected the 2019 Volvo XC90 motor vehicle owned by COSTELLO, via photo estimating on the GEICO app, and wrote an Estimate in the amount of $1,411.19.

Thereafter, a GEICO adjuster inspected the aforementioned 2019 Volvo XC90 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $6,355.69.

Thereafter, a GEICO adjuster inspected the aforementioned 2019 Volvo XC90 motor vehicle in person and wrote a Final Estimate in the amount of $841.70.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to COSTELLO by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $9,300.22.

39.     That every aspect of the defendant's scheme is motivated by profit and greed without regard for its insured(s), claimants, businesses that serve its insureds, and the consumer-public at large.

40.     That the scheme is perpetrated, aided, and abetted by employees of GEICO and Independent Contractors who receive financial incentives from Defendant to inspect damage to motor vehicles, on GEICO's behalf, solely on photographs, while knowing that such method cannot reveal damage that is not visible on a two-dimensional photograph.

## FIRST CAUSE OF ACTION

41.     That in the years from 2018 to present, the defendant through its agents, servants, employees, and independent contractors made misrepresentations or omissions that were likely to mislead and deceive a reasonable consumer.

42.     That the defendant, through its agents, servants, employees, and independent contractors, including but not limited to its appraisers, supervisors and adjusters, operated a scheme to defraud its insureds and claimants by advertising it could fairly and accurately appraise the damage to their motor vehicles solely by viewing photographs of visible damage.

43.     That the defendant, its agents, servants, employees, and independent contractors, including but not limited to its appraisers, supervisors and adjusters, knew or should have known that in most, if not all instances, motor vehicles involved in an accident sustain damage that is hidden from plain sight.

44.     That the defendant, its agents, servants, employees, and independent contractors, including but not limited to its appraisers, supervisors and adjusters, did, and continue to issue appraisals that undervalue the cost of necessary repairs to vehicles.

10

45.     That the defendant, its agents, servants, employees, and independent contractors, including but not limited to its appraisers, supervisors and adjusters, created its scheme with the knowledge that a percentage of its insureds and claimants will accept payment from GEICO and never repair their vehicles due to the erroneous belief that there is no further damage not visible to the naked eye.

46.     That it is commonplace for an insurer such as the defendant, to perform more than one inspection of a vehicle, known as a supplement, to address damage that cannot be viewed on a photographic inspection.   That prior to partial or total dismantling of a vehicle to inspect for hidden damage, it is not possible to arrive at a fair and reasonable estimate of the costs to repair said vehicle and return it to its pre-accident condition.

47.     That the plaintiff, and public-at-large, have been injured as the result of the defendant's scheme.

48.     That the defendant, its agents, servants, employees, and independent contractors, including but not limited to its appraisers, supervisors and adjusters, created this scheme knowing it will save a significant amount of money that it pays on claims by virtue of the fact that a significant percentage of claimants will never repair their vehicles and therefore no supplement(s) requiring additional sums of money to be paid will be prepared. That the defendant utilized person(s) who were not qualified to issue damage repair appraisals for damage to vehicles.

49.     That the defendant with intent to deceive, did not properly and professionally evaluate the damage to its insured's or its claimant's vehicles on photo-estimating.

50.     That the defendant, with intent to deceive, failed to inform its insureds and claimants that the damage to their vehicles could not be fully determined by the use of photo-estimating.

11

51.     That the defendant has been, and still is, aware that certain motor vehicle manufacturers, such as Mercedes Benz, Audi, BMW and Porsche, require that certain procedures and parts be used to return a damaged vehicle to its pre-accident condition.

52.     That the defendant knew or should have known that it is impossible for photo-estimating to determine what procedures and parts are necessary to comply with manufacturer requirements.

53.     That the defendant has been, and still is, aware that it is jeopardizing the safety of its insureds, claimants and others by failing to properly appraise the damage to motor vehicles.

54.     That the defendant, its agents, servants, employees, and independent contractors employed the deceptive practices as detailed above with the knowledge that its insureds and claimants will never take their vehicles to a repair shop, such as the plaintiff, and thereby saving a significant sum of money on supplemental repairs.

55.     That as the result of the misrepresentations by the defendant, Plaintiff's customers were deceived and as a result Plaintiff has suffered and will continue to suffer monetary damages. That the defendant's acts, policies and procedures were in violation of the New York State Insurance Law.

56.     That the defendant failed to negotiate in good faith and fair dealing with Plaintiff in violation of 11 NYCRR 216.7(b) and 11 NY ADC 216.12.

57.     That in Defendant's scheme, the defendant engaged in materially deceptive practices and representations designed to, and which did, and which continue to do so, mislead its insureds and claimants to believe that their vehicles could be repaired for the amount offered, when they were aware that this was not true.

58.     That the deceptive practices and representations made by the defendant have caused injury to the public at large. For example, if the sensors that alert a driver to problems

12

with the car or control airbags are damaged, the driver, passengers or other persons upon the road are at risk of injury.

59.     That the defendant, through its custom and practice, rewarded those employees and/or independent contractors who purposely undervalued the cost of repairs on photo estimates.

60.     That each separate act and action by the defendant constitutes a separate violation of GBL Section 349 and 349(h). The photos taken through the photo-estimating app does not show potential dangers of possible hidden damages.

61.     That by reason of the foregoing, the public at large and the consumer in general have sustained damages as a result of the defendant's non-compliance in the requirements imposed by 11 NYCRR 216.7(b) and 11 NYCRR 216.12 and all rights afforded by Insurance Law Section 2610.

62.     That by reason of the foregoing, the plaintiff has been damaged and injured in its business and property, in an amount as yet to be determined, but in excess of fifty-million dollars in business sales, with the exact amount to be determined at trial.

63.     That the plaintiff is entitled to an award against Defendant of interest and reasonable attorneys' fees, pursuant to GBL Section 349(h), of not less than fifty million dollar ($50,000,000.00).

## SECOND CAUSE OF ACTION

64.     That 11 NYCRR 216.7 (Unfair Claims Settlement Practices) requires good faith negotiation amongst insurers, their insureds, and claimants, or their designated representatives.

65.     That the defendant, is in violation of the aforementioned sections of the Insurance Law and the Consolidated Laws of New York State.

13

66.     That Defendant, could not, and did not, negotiate in good faith the adjustment of auto body repair claims, as required under and in violation of Section 2610 of the Insurance Law and 11 NYCRR 216.7(b) by using photo-estimating of the damage to motor vehicles.

67.     That Defendant made misrepresentations, omissions, and uttered material falsehoods which mislead its insureds/claimants and did mislead existing and prospective customers of the plaintiff.

68.     That the actions, conduct and/or statements of the defendant were motivated by greed.

69.     That Defendant, its agents, servants and employees, including but not limited to its Appraisers supervisors and adjusters, individually and collectively, made material falsehoods to their insureds/claimants that their amount of money offered was fair and reasonable to repair and return their vehicles to their pre-accident condition, when Defendant knew such assurance was untrue.

70.     That Defendant, its agents, servants and employees, including but not limited to its appraisers, supervisors and adjusters, individually and collectively, did, and does, issue damage repair estimates to plaintiffs at below market value and below the plaintiff's estimate of repair.

71.     That said actions and conduct were false and/or misleading and made with the intent steer customers to the defendant's Direct Repair Shops with whom they have a contractual relationship and were made in violation of Section 2610(a) of the New York State Insurance Law, 11 NYCRR 216.7(b) and 11 NYCRR 216.12.

72.     That Defendant's employees were and are not properly trained and/or qualified to issue damage repair estimates to appraise the damage to its insured(s)/claimant(s) vehicles serviced at Plaintiffs facility.

73.     That Plaintiff is entitled to an award against Defendant of interest and reasonable attorney's fees.

74.     That by reason of the foregoing, Plaintiff has been damaged and injured in them business and property in an amount as yet to be determined, but in excess of fifty-million dollars ($50,000,000.00) in business sales, with the exact amount to be determined at trial.

**WHEREFORE,** Plaintiff, M.V.B. COLLISION INC. d/b/a MID ISLAND COLLISION, demands judgment against Defendant, GEICO INSURANCE COMPANY, in the sum of fifty-million dollars ($50,000,000.00), or some other amount, to be determined by the Court at the time of trial together with the costs and disbursements of this action, as well as punitive damages, together with such other relief as this Court deems just and proper.

Dated:  Carle Place, New York
       November 22, 2022              Yours, etc.

                               STEVEN F. GOLDSTEIN, LLP

                               BY: GINA M. ARNEDOS
                               *Attorneys for Plaintiff*
                               One Old Country Road, Suite 318
                               Carle Place, New York 11514
                               (516) 873-0011

TO:    GEICO General Insurance Company
        One GEICO Plaza
        Washington, DC 20076-0001

## VERIFICATION

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NASSAU    )

I, ROBERT JESBERGER, President of M.V.B. COLLISION INC. d/b/a MID ISLAND

COLLISION, being duly sworn, deposes and says: I am the plaintiff in the within action; I have

read the foregoing VERIFIED COMPLAINT and know the contents thereof; the same is true to

my own knowledge, except as to the matters therein stated to be alleged on information and

belief, and as to those matters, I believe them to be true.

_____
ROBERT JESBERGER

Sworn to before me this
_____ day of November, 2022

_____
Notary Public

GINA M. ARNEDOS
Notary Public, State of New York
Registration No. 02AR6157128
Qualified in Nassau County
Commission Expires 12/04/2022